**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ALVIN MAURICE HAILEY,   )
           )
    Plaintiff,   )  Case No. 3:20-cv-60
           )
  v.        )  Magistrate Judge Patricia L. Dodge
           )
JOHN WETZEL, *et al.*,   )
           )
    Defendants.  )

## <u>MEMORANDUM OPINION</u>[1]

Pending before the Court is Defendants' Motion for Summary Judgment. (ECF 78.) For the reasons that follow, Defendants' Motion will be granted.

## I. Relevant Procedural History

Plaintiff Alvin Maurice Hailey is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") and housed at SCI Somerset. He is proceeding *pro se*.

Plaintiff commenced this civil rights action in March 2020 in the Court of Common Pleas of Somerset County against John Wetzel, who at the time was the Secretary of the DOC, and these ten officials who worked at SCI Somerset: Superintendent Eric Tice; Unit Manager Cindy Henderson; Lt. Walters; Cpt. Furman; Mailroom Supervisor Weigle; Counselor Marshall; Sgt. Ringling; and Correction Officers ("CO") Rose, Stanton and Hoffman. The original complaint asserted constitutional tort claims under 42 U.S.C. § 1983 against Defendants as well as supplemental state law claims.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

Defendants removed the case to this Court (ECF 1) and filed their answer to the original complaint (ECF 4). The Court then issued a case management order setting forth the original schedule for discovery and the filing of motions for summary judgment. (ECF 7.)

During the discovery phase of this litigation, Plaintiff filed a motion for leave to file an amended complaint, which the Court granted. (ECF 19, 21.) The Amended Complaint (ECF 22), which is the operative pleading, names another defendant: Becky Gauntner, the librarian at SCI Somerset. Plaintiff sues Sec. Wetzel and Supt. Tice in their individual and official capacities and the remaining defendants in his or her individual capacity. (ECF 22, Amend. Compl. ¶¶ 6-15.) As relief, he seeks damages, declaratory relief and an injunction removing all defendants from their jobs with the DOC. (*Id.* ¶¶ 95-99.)

After Plaintiff filed the Amended Complaint, the Court issued a revised case management order and Defendants filed their Answer. (ECF 50, 56.) Following the close of discovery, Defendants moved for summary judgment on all claims.[2] (ECF 78.) Their motion is fully brief. (ECF 79, 84, 85, 92-95, 112-13)[3]

---

[2] The Court denied Plaintiff's request to file an out-of-time motion for partial summary judgment. (ECF 90, 92, 96, 106.) However, because he is proceeding *pro se*, the Court has considered, where appropriate, his proposed motion for partial summary judgment (ECF 92) as an additional response in opposition to Defendant's summary judgment motion. The Court has also considered Plaintiff's "Counter-Affidavit in Support of Plaintiff's Motion for Summary Judgment" (ECF 95) as a declaration in opposition to Defendants' summary judgment motion. Giving Plaintiff the benefit of the doubt, the unsworn declaration at page 7 of ECF 92 also appears that it was intended to pertain to his declaration filed at ECF 95.

[3] Plaintiff's "Opposition to Summary Judgment" (ECF 94) and his response (ECF 93) to Defendants' Concise Statement of Undisputed Facts were not scanned properly when they were originally docketed with the Court. The documents as initially filed at ECF 93 and 94 were missing pages. The Court has corrected the error and the Court's docket has been updated with the complete versions of ECF 93 and 94 at ECF 112 and 113, respectively.

II.     **Relevant Factual Background**[4]

This case involves seven incidents that occurred at SCI Somerset from February 20, 2019

through February 12,  2020. (ECF 22, Amend. Compl. ¶¶ 20-67.) The Court refers to these events

as Incidents 1 through 7. In addition to the claims described below, the Amended Complaint also

brings § 1983 claims for "supervisor liability" against Sec. Wetzel, Supt. Tice and Mailroom

Supervisor Weigle, among other defendants. (*Id.* ¶¶ 81, 87-88, 92.) It also brings conclusory claims

that all defendants engaged in a conspiracy to violate his rights and violated his rights under the

Eighth Amendment. (*Id.* ¶ 93.)

## Incident 1

On February 20, 2019, Plaintiff received a misconduct for refusing to obey an order,

presence in an unauthorized area, and encouraging unauthorized group activity. Sgt. Ringling was

the reporting staff member. As a result of the misconduct, Plaintiff was transferred to the

Restrictive Housing Unit ("RHU") for a short time. (ECF 84 ¶ 14; Def's Ex. A, ECF 85-1 at 2-3.)

In the Amended Complaint, Plaintiff alleged that Sgt. Ringling did not permit him to pack his own

property prior to his transfer to the RHU. (ECF 22, Amend. Compl. ¶ 20.)

_____

[4] Disputed facts are noted where relevant. The factual background is taken from Defendants'
Concise Statement of Undisputed Material Facts (ECF 84) and Plaintiff's response (ECF 112), as
well as the exhibits cited by the parties. Additionally, in determining whether genuine issues of
material fact exist in this case, the Court considered the Amended Complaint (ECF 22) which
Plaintiff signed under penalty of perjury. Although a party may not rest on his or her pleadings to
create a fact issue sufficient to survive summary judgment, allegations that are based on personal
knowledge and which are in a verified complaint (which is ordinarily not required under the
Federal Rules of Civil Procedure) may be used to oppose a motion for summary judgment because
the complaint can be treated as an affidavit or declaration. *See, e.g.*, *Reese v. Sparks*, 760 F.2d 64,
67 (3d Cir. 1985); 11 MOORE'S FEDERAL PRACTICE-CIVIL § 56.94[2A], Lexis (database updated
Mar. 2021). The Court has therefore considered the factual assertions in the Amended Complaint
to the extent that they are based on Plaintiff's personal knowledge and set out facts that would be
admissible in evidence, and Plaintiff is competent to testify on the matters stated. *See* Rule
56(c)(4).

The parties agree that Plaintiff's property was lost at some point during his transfer to or from the RHU. On February 25, 2019, Plaintiff asked Unit Manager Henderson about his missing property. According to Plaintiff, Henderson responded: "I will speak to Sgt. Ringling, however, write RHU Lt. Walters about your missing items also." (*Id.* ¶ 23.) Plaintiff did so, and Lt. Walter advised him that since his property was missing before he came to the RHU, Plaintiff's inquiries should be directed to Henderson. (*Id.* ¶ 24.)

In Grievance 790692, dated March 10, 2019, Plaintiff complained that after Sgt. Ringling sent him to the RHU, "[my] cellmate was told to pack my property…which he did. He b[r]ought it and sat it in the dayroom of J [Block]. My property was never inventoried before it left the block and when it arrived in the RHU it was never inventoried." (Def's Ex. B, ECF 85-1 at 5.) Plaintiff wrote that he is "missing pictures, legal mail, clothing, toiletries, commissary as well as a secure pak." (*Id.*) He explained that after his property was lost he contacted Henderson, an unidentified RHU lieutenant (presumably Lt. Walters) and Supt. Tice in an attempt to informally resolve the matter before filing the grievance. (*Id.* at 5; *see also* ECF 84 ¶ 22; ECF 112 ¶ 22.)

As relief, Plaintiff requested in the grievance that he be "reimbursed for the items lost which is around $362.84 worth of property. Pictures and legal mail is more." (*Id.* at 5-6.) He provided a detailed list that described his lost property (mainly food and other commissary items) and their replacement value. (*Id.* at 6-8.) Plaintiff did not specify what pieces of legal mail/material he was missing or provide any other details about those documents or the litigation to which those they pertained, however. (*Id.*)

On September 10, 2019, Supt. Tice issued the following Remanded Appeal Response to Grievance 790692:

> In investigating this grievance further it was found that [Plaintiff's] property was not inventoried upon entering the RHU nor was the same inventoried when he was released from the RHU. Policy was not followed and this will be addressed with staff. With this in place I am…reimbursing [Plaintiff] in the amount of $362.84 for the property that was misplaced during this move.

(Pl's Ex. A-1, ECF 93-1 at 2. ) Plaintiff received reimbursement of the requested $362.84. (ECF 84 ¶ 23; ECF 112 ¶ 23.)

Plaintiff appealed Supt. Tice's response because it did not reimburse him for his legal mail/material. (Pl's Ex. located at ECF 92 at 9.) The Secretary's Office of Inmate Grievance and Appeals upheld Supt. Tice's response, explaining: "This office finds that no reasonable amount of compensation can be provided for the missing legal mail/material *as you provided no specific case/docket number(s) as well as any specific documents that you allege to be missing*." (*Id.*) (emphasis added.)

In the Amended Complaint, Plaintiff asserted that he was injured by the actions of Sgt. Ringling, Henderson and Lt. Walters because he was: (1) unable to "perfect" a petition challenging his state court judgment of sentence under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 *et seq.*; and (2) lost legal mail/material relevant to a civil lawsuit he was pursuing in the United States District Court for the Eastern District of Pennsylvania against Montgomery County. (ECF 22, Amend. Compl. ¶¶ 20-33.)

There is no evidence in the summary judgment record about the PCRA case Plaintiff referenced in the Amended Complaint. As for the civil lawsuit he referenced, it is one that he filed *pro se* in May 2019 in the Eastern District Court at Civil Action No. 19-cv-2171. Plaintiff named as defendants in that lawsuit the Montgomery County Correctional Facility, the Pennsylvania State Police, and many individual defendants. None of the defendants named in that lawsuit are defendants in the instant civil action. (*See* docket for *Hailey v. Montgomery Cnty. Corr. Facility,*

*et al.*, No. 19-cv-02171 (E.D. Pa.) ("Civil Action No. 19-cv-2171") (available on PACER.) The docket for that civil action, of which this Court may take judicial notice, establishes that Plaintiff obtained counsel in that case and settlement conferences were held in July 2020. On July 28, 2020, the Eastern District Court dismissed the case because the parties reached a settlement. (*See* ECF 41, 61-63 in Civil Action No. 19-cv-2171; *see also* Def's Ex. M, ECF 85-2 at 12.)

The Amended Complaint brings § 1983 claims against Sgt. Ringling, Henderson and Lt. Walters for allegedly interfering with Plaintiff's right to access the courts. Plaintiff also claims they were negligent and did not follow DOC policy. (ECF 22, Amend. Compl. ¶¶ 74-76, 85.)

### Incident 2

On March 22, 2019, Plaintiff's work supervisor told him to report to the Program Services building to pick up his legal mail. That supervisor did not give Plaintiff the required written pass authorizing him to walk to the Program Services building, however. (ECF 22, Amend. Compl. ¶ 35.) As a result, Sgt. Ringling stopped Plaintiff when he was on his way to that building and directed him to "return to work or be sent to the RHU." (*Id.*) Plaintiff complied with Sgt. Ringling's instruction. (*Id.*)

According to Plaintiff, he then obtained the required pass and began walking to the Program Services building a second time. Sgt. Ringling stopped him again and said to him: "we tried this already, and you forfeited you[r] opportunity." (*Id.* ¶ 36.) Plaintiff thus returned to his work assignment without obtaining his legal mail. (*Id.*)

Plaintiff did not receive his legal mail on March 22, 2019 and it was returned to the sender. (*Id.* ¶¶ 38-39.) SCI Somerset's legal mail log for that date recorded that Plaintiff refused mail from the "Public Defender/Norristown." (Def's Ex. E, ECF 85-1 at 30.) Defendants assert that Plaintiff's mail was returned because he failed to follow protocol. (ECF 84 ¶ 27.) Plaintiff counters that he

did not refuse his legal mail and tried to retrieve it but could not do so for the reasons described above. (ECF 112 ¶ 27.)

According to Plaintiff, he spoke to Unit Manager Henderson about the incident but she could not provide him assistance because his mail already had been returned. (ECF 22, Amend. Comp. ¶ 39.) Plaintiff alleged in the Amended Complaint that Mailroom Supervisor Weigle told Henderson that Plaintiff's legal mail was returned upon the order of Cpt. Furman. (*Id.*) Plaintiff has directed the Court to no evidence in the summary judgment record to support this allegation.

Plaintiff avers that on March 27, 2019, he wrote to Cpt. Furman and asked "him to produce a document with Plaintiff's signature giving consent or notice that his mail was being rejected." (*Id.* ¶ 41.) According to Plaintiff, Cpt. Furman replied: "You were given an opportunity to receive your legal mail on said date. You refused to follow the officer's directions, therefore you refused your mail[.]" (*Id.*) Plaintiff claims that he never received a misconduct for failing to follow an officer's directions. He also asserts that his mail was returned in contravention of DC-ADM 803, which sets forth the DOC's mail processing procedures. (*Id.* ¶¶ 40-41; *see also* ECF 112 ¶ 27; Pl's Ex. B, ECF 93-3 at 2.)

Plaintiff filed Grievance 793818 complaining about the incident. (ECF 84 ¶ 24; ECF 85-1 at 27.) He wrote that on March 22, 2019 "multiple CO's" stopped him from walking to the Program Services building because he did not have a pass authorizing him to be in the area. (*Id.*) Plaintiff wrote that :

> [t]hree days went by and I never was called [to pick up his legal mail]. On 3/27/19 I talked to Unit Manager Henderson who made calls to try and figure out where my mail was. They told her I refused my legal mail and they sent my mail back and told me to contact whoever sent it and have them send it back to me. I never refused my mail. I was threatened with RHU if I didn't return to work. My legal mail should have been given to me the next time legal mail was done.

7

(*Id.*)

As relief, Plaintiff sought "$400,000 for SCI Somerset denying" him his legal mail and a letter from "administration admitting" that he was denied his legal mail that he could then "show the courts[.]" (*Id.* at 28.) At no point in Grievance 793818 does Plaintiff identify a case or underlying legal matter to which his legal mail pertained. (*Id.* at 27-28.)

The Amended Complaint brings claims against Sgt. Ringling, Cpt. Furman, CO Rose, CO Stanton and Weigle, the mailroom supervisor, for violating Plaintiff's right to access the court by depriving him of his legal mail. (Amend. Compl. ¶¶ 79-80.)

**Incident 3**

Plaintiff avers that on April 1, 2019, Marshall, his counselor, asked him why he and his father had complained about the incident in which Plaintiff's legal mail was return to sender (Incident 2). (*Id.* ¶ 47.) Plaintiff tried to explain to Marshall the circumstances surrounding the incident, but Marshall repeatedly told him "that's not [the] policy" and he should withdraw his grievance. (*Id.*) Plaintiff asserts that, after he told Marshall that he would not withdraw the grievance, Marshall threatened him and suggested that his chance at getting parole could be affected if he did not do so. (*Id.* ¶ 48.)

Plaintiff did not withdraw the grievance following his meeting with Marshall. In fact, several days later he filed Grievance 795831 in which he complained about Marshall's alleged conduct. (Def's Ex. F, ECF 85-1 at 32.) Plaintiff wrote in the grievance that he contacted Supt. Tice after the incident with Marshall but that "nobody contacted me." (*Id.*)

The Amended Complaint asserts claims against Marshall for retaliation and for violating his right to access the court. (ECF 22, Amend. Compl. ¶¶ 77, 79.)

**Incident 4**

Plaintiff avers that on September 19, 2019, CO Hoffman dumped the contents of a 50-gallon trash can near his cell door and stated, "since ya'll like filing grievances then pick this up n—." (ECF 22, Amend. Compl. ¶ 50.) The Amended Complaint asserts a retaliation claim against CO Hoffman for this incident. (ECF 22, Amend. Compl. ¶¶ 77, 94.)

**Incident 5**

In the Amended Complaint, Plaintiff claimed that on one occasion when he walking outside, CO Rose stopped him and subjected him to a strip search. Plaintiff asserts that CO Rose did so because he had filed a grievance against him. (ECF 22, Amend. Compl. ¶ 55.) Plaintiff does not specifically identify the grievance he allegedly filed against CO Rose or direct the Court to its location in the summary judgment record.

Defendants have produced a video recording taken from a camera on the SCI Somerset East Walk (Camera 56) that captured the relevant events, which occurred on October 23, 2019.[5] (ECF 84 ¶ 33.) The video (Def's Ex. H), which contains no sound, depicts the following:[6]

> o   At 0:19:40, Plaintiff is walking down the Unit A East Walk.

---

[5] Plaintiff alleged in the Amended Complaint that this incident occurred on September 10, 2019 (ECF 22 Amend. Compl. ¶ 55), but discovery revealed that it occurred on October 23, 2019. (Def's Ex. G, ECF 85-1 at 35; Def's Ex. H.)

[6] When the events at issue in a case have been captured on videotape, the court must consider the videotaped evidence in determining whether there is any genuine dispute as to material facts. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Although Plaintiff alleged in the Amended Complaint that CO Rose "violently grabbed[him], handcuffed [him], [and] forced [him] to the ground[,]" (ECF 22, Amend Compl. ¶ 55), the video provides no support for those allegations. The Court must view the facts in the light depicted by the videotape. *Scott*, 550 U.S. at 380-81 (relying on a videotape in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.").

- o At 0:20:09, Plaintiff engages with another inmate. Plaintiff takes his hands out of his pockets, touches hands with the other inmate, and then puts his hands back in his pocket and keeps walking, completing these actions at around 0:20:12.

- o At 0:20:17, Plaintiff turns back and says something.

- o At 0:20:23, the camera zooms in to look closer at Plaintiff. His hands are in his pockets and he keeps walking down the Unit A East Walk.

- o At 0:20:52, Plaintiff turns around suddenly and begins walking in the opposite direction.

- o At 0:21:06, CO Rose and another officer approach Plaintiff. Plaintiff places his arms out and the officers handcuff him. The officers then escort him to the Program Services building.

(Def's Ex. H; *see also* ECF 84 ¶¶ 32-43.)

Plaintiff does not dispute this description of events. Rather, he asserts that there was "no penological interest" that justified CO Rose's actions because no contraband was found on him during the strip search and he was checked for contraband when he left his work assignment, just before the events recorded on the video. (ECF 112 ¶¶ 35-43.)

The Amended Complaint asserts a claim of retaliation against CO Rose for this incident. (ECF 22, Amend. Compl. ¶ 55.)

**Incident 6**

Plaintiff left his legal material in the law library on February 3, 2020. According to Plaintiff, this material pertained to the civil rights lawsuit he was litigating at the time before the Eastern District Court at Civil Action No. 19-cv-2171. (ECF 22, Amend. Compl. ¶ 60.) Plaintiff alleged in the Amended Complaint that Cpt. Furman "negligently misplaced" these documents because he did not follow DOC policy and return them to Plaintiff after they were found. (*Id.* ¶¶ 60-63.)

On February 19, 2020, Plaintiff filed Grievance 851542 in which he complained about the incident and Cpt. Furman's alleged role in it. (Def's Ex. I, ECF 85-1 at 40.) Plaintiff admitted in this grievance that he left his legal material in the law library because he "forgot[ ] about it." (*Id.*) He wrote that another inmate later was issued a misconduct over the incident but that Plaintiff legal material was not returned to him. (*Id.*)

On May 9, 2020, Plaintiff withdrew Grievance 851542. (*Id.* at 41.) In the grievance withdrawal signed by Plaintiff, it was recorded that twelve pages of his legal material was returned to him on March 30, 2020. (*Id.*) Plaintiff contends that not all of his legal material was returned to him but he does not identify or describe the missing documents. (ECF 112 ¶ 47.)

The Amended Complaint asserts claims of negligence, retaliation and denial of access to the court against Cpt. Furman for his alleged role in Incident 6. (ECF 22, Amend. Compl. ¶¶ 63, 77.)

## Incident 7

Plaintiff alleged in the Amended Complaint that on February 12, 2020, Gaunter, the librarian at SCI Somerset, denied his request to make copies of legal documents. (ECF 22, Amend. Compl. ¶ 67.) Plaintiff filed Grievance 851464 over the incident. (Def's Ex. J, ECF 85-1 at 43.)

In this grievance, Plaintiff claimed that he missed a deadline because he was denied access to the copier. He alleged that his intent on February 12, 2020 was "to file an extension of time" in Civil Action No. 19-2171. He attached the first page of a court order issued in that case scheduling an initial pretrial conference for February 20, 2020. Plaintiff claimed that Gaunter did not let him make the copies because he did not have a "copy card." He contended that she should have let him use "cash slips to make copies." (*Id.* at 43-44; *see also* ECF 84 ¶¶ 48-53.)

Defendants point out that there is no evidence showing that Plaintiff missed a deadline in Civil Action No. 19-2171 and/or that he was adversely affected by Gauntner's action. They also direct the Court to evidence that, a few days before the incident, Plaintiff had filed a motion for appointment of counsel in Civil Action No. 19-2171. (Def's Ex. L, ECF 85-2 at 5-8.) As discussed, Plaintiff obtained counsel in that civil action and the case was dismissed on July 28, 2020 because the parties reached a settlement. (Def's Ex. M, ECF 85-2 at 12.)

The Amended Complaint claims that Gaunter violated Plaintiff's right to access the court and violated DOC policy on the use of the copier machine. (ECF 22, Amend. Compl. ¶ 69.)

## III.   Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court a lack of evidence in support of the non-moving party's claims. *Id.*; *see, e.g.*, *Spierer v. Rossman*, 798 F.3d 502, 508 (7th Cir. 2015).

Once the moving party has met its initial burden, then the burden shifts to the non-moving party to show, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will

be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cnty Fam. YMCA*, 418 F.3d 265,266 (3d Cir. 2005); *Doe v. Cnty of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*, *Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories…sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

## IV.    Discussion

Plaintiff brings his constitutional tort claims against each defendant under 42 U.S.C. § 1983. To prevail on a claim under § 1983, a plaintiff must show "the violation of a right secured

by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 does not create substantive rights but "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

"The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (internal quotations and citations omitted). "Next, a plaintiff must demonstrate a defendant's 'personal involvement in the alleged wrongs.'" *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). That is because only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, importantly, each defendant in this civil action can be held liable only for his or her own conduct. *See, e.g.*, *Rode*, 845 F.2d at 1207; *see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Med.*, 766 F.3d 307, 316 (3d Cir. 2014) (*rev'd sub. nom. on other grounds* 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

1.  Official Capacity Claims Against Sec. Wetzel and Supt. Tice

The Amended Complaint asserted claims against Sec. Wetzel and Supt. Tice in both their official and individual capacities. Defendants contend that the official capacity claims are barred by Eleventh Amendment immunity.

A § 1983 claim asserted against an individual in his or her "official capacity" is synonymous with a claim against the entity that employs the individual (here, the DOC). *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits…'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 690 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

The Eleventh Amendment proscribes actions in the federal courts against states, their agencies and state officials acting within their official capacities. *Graham*, 473 U.S. at 165-67; *Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89 (1984); *Betts v. New Castle Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) ("official capacity suits generally represent only another way of pleading an action against the state.") (citing *Lombardo v. PA. Dept. of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008)). The DOC and the facilities that comprise the DOC are agencies or arms of the Commonwealth of Pennsylvania and, as such, both they and their employees who are sued in their official capacities are entitled to Eleventh Amendment immunity unless an exception to such immunity applies. *See*, *e.g.*, *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000).

"Such immunity…may be lost in one of two ways: (1) if the Commonwealth waived its immunity; or (2) if Congress abrogated the States' immunity pursuant to a valid exercise of its power." *Id.* Neither exception applies to Plaintiff's § 1983 claims. The Commonwealth has not waived its immunity, *see*, *e.g.*, *id.* (citing Pa. Const. Art. I, § 11 and 42 Pa. Cons. Stat. § 8521(b)), and Congress did not abrogate states' sovereign immunity when it enacted § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Quern v. Jordan*, 440 U.S. 332, 339-46 (1979).

Thus, all § 1983 claims asserted against Sec. Wetzel and Supt. Tice in their official capacities are barred by the Eleventh Amendment.

Although claims against state officers in their official capacity for prospective relief are not barred by the Eleventh Amendment, this exception, first set forth in *Ex parte Young*, 209 U.S. 123 (1908), is "narrow," in that it "applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (emphasis added) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)); *see also Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013). The purpose of this exception ensures that state officials cannot employ the Eleventh Amendment to avoid compliance with federal law. *Id.* In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit in this case, the Court must determine whether there is a material issue of fact about an ongoing violation of federal law and whether Plaintiff seeks injunctive relief from a defendant who can stop the violation.

Plaintiff's claim for injunctive relief (in which he asserts an order that all defendants be removed from their jobs with the DOC so as "to ensure" their alleged unconstitutional conduct does not continue) does not fit within the narrow *Ex parte Young* doctrine. The summary judgment record lacks any evidence that Plaintiff faces an ongoing constitutional violation. Rather, Plaintiff's claims are based on the incidents of alleged misconduct described above that occurred between February 20, 2019 and February 12, 2020. Plaintiff has directed the Court to no evidence from which a reasonable juror could conclude that a policy maintained by the DOC's current Secretary or Supt. Tice is causing an ongoing violation of his constitutional rights.

Thus, Sec. Wetzel and Supt. Tice are entitled to judgment in their favor on all claims (Incidents 1 through 7) Plaintiff asserts against them in their official capacities and the Court will grant their motion on these claims.

2. "Supervisory Liability" Claims Against Sec. Wetzel, Supt. Tice and Mailroom Supervisor Weigle[7]

As discussed above, only a person who "subjects or causes to be subjected" a plaintiff to a deprivation of rights can be held liable under § 1983. The doctrine of respondeat superior, which makes an employer automatically responsible for the wrongdoing of employees, does not apply under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 67t (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode*, 845 F.2d at 1207. This means that supervisory officials cannot be held liable for every illegal act that takes place at the prison committed by his or her subordinate. Rather, they can be held liable only for their own conduct. *Id.*

The Court of Appeals has identified three ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. Liability may attach if the supervisor: (1) directed the subordinate to take the action in question; (2) had "knowledge of and acquiesced" in the subordinate's unconstitutional conduct, meaning the supervisor knew that his or her subordinate was violating the plaintiff's rights but failed to stop the subordinate from doing so; or (3) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation. *See*, *e.g.*, *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv.*

---

[7] Plaintiff brings his "supervisory liability" claims against Sec. Wetzel and Supt. Tice in their individual capacities.

*Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); *Rode*, 845 F.2d at 1208. "'Failure to' claims—failure to train, failure to discipline, or, as in the case here, failure to supervise—are generally considered a subcategory of policy or practice liability." *Barkes*, 766 F.3d at 316.

Defendants argue that Sec. Wetzel, Supt Tice and Weigle are entitled to summary judgment because there is no evidence from which a reasonable juror could conclude that they were personally involved in the claims Plaintiff asserts against them. They also contend that they cannot be held liable under a theory of supervisor liability.

Plaintiff does not specifically oppose Defendants' arguments. In any event, he has produced no evidence that Sec. Wetzel or Weigle had any involvement in the events at issue in this lawsuit. As for Supt. Tice, Plaintiff has directed the Court to no evidence from which a reasonable finder of fact could conclude that, with deliberate indifference to the consequences, he established and maintained a policy, practice or custom at SCI Somerset which directly caused any of the constitutional violations that Plaintiff asserts were committed by his subordinates at SCI Somerset.

Additionally, evidence that Plaintiff was dissatisfied with Supt. Tice's response to Grievance 7906092 about Incident 1 (Pl's Ex. A-1, ECF 93-1 at 2), or that Plaintiff contacted him after his interaction with Marshall about Incident 3, does not create a material issue of fact that precludes summary judgment in Supt. Tice's favor. That is because allegations of personal involvement after-the-fact cannot support personal involvement in the incident itself. *See*, *e.g.*, *Rode*, 845 F.2d at 1208 (involvement in disposing of a grievance is not enough to show the actual knowledge necessary for personal involvement); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 295 (3d Cir. 2016) (affirming district court's decision to dismiss plaintiff's claims against warden and deputy warden because the "complaint makes clear that [plaintiff] only spoke to these defendants

18

after the alleged retaliation occurred," and provides no basis for inferring that they "were personally involved in any purported retaliation"); *Simonton v. Tennis*, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (plaintiff's allegation that prison officials responded inappropriately, or failed to respond to a prison grievance, did not establish that the official was involved in the underlying unconstitutional conduct).

For these reasons, Sec. Wetzel and Supt. Tice are entitled to judgment in their favor on all claims Plaintiff asserts against them (Incidents 1 through 7 and a "supervisory liability" claim). Additionally, Mailroom Supervisor Weigle is entitled to judgment in her favor on all claims Plaintiff asserts against him or her (Incident 2 and a "supervisory liability" claim). As a result, the Court will grant Defendants' motion on all claims asserted against them.

   3.   Access-to-Court Claims

Plaintiff contends that Sgt. Ringling, Unit Manager Henderson, Lt. Walters,[8] Cpt. Furman, CO Rose, CO Staton, Marshall and Gaunter interfered with his right to access the court, in violation of his First Amendment rights.[9] (*See* Incidents 1, 2, 3, 6 and 7.) To counter Defendants' arguments

---

[8] Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to his claims that hinge on Incident 1 (asserted against Sgt. Ringling, Henderson and Lt. Walters) because he did not specifically identify in Grievance 790692 the legal material that was lost when he was transferred to the RHU. This argument is not persuasive because Plaintiff set forth in that grievance that his legal material was missing and that he wanted to be compensated for his loss. (*See* Def's Ex. 2, ECF 85-1 at 5.)

[9] As to Incident 1, Plaintiff also asserted in the Amended Complaint that Sgt. Ringling, Henderson and Lt. Walters violated his right to due process under the Fifth and Fourteenth Amendment when *Footnote continued on new page…*

19

that they are entitled to summary judgment on these access-to-court claims, Plaintiff must produce evidence from which a reasonable fact finder could conclude that he: (1) suffered an "actual injury," meaning he "lost a chance to pursue a 'nonfrivolous' or 'arguable'" legal claim; and (2) has "no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).[10]

Plaintiff has failed to meet his burden of showing that there is a material issue of fact on the first element. As discussed above, there is no evidence in the summary judgment record

---

they allegedly lost his property. Because these defendants are state employees, Plaintiff cannot assert a claim against them under the Fifth Amendment. *See*, *e.g.*, *Fauntleroy v. Clark*, No. 1:19-cv-182, 2020 WL 5351063, *3 (W.D. Pa. July 30, 2020) ("it is axiomatic that '[t]he limitations of the [F]ifth [A]mendment restrict only federal government action.") (quoting *Nguyen v. U.S. Catholic Conf.*, 719 F.2d 52, 54 (3d Cir. 1983)), report and recommendation adopted, 2020 WL 5350532 (W.D. Pa. Sept. 4, 2020). As for the Fourteenth Amendment, its Due Process Clause is not violated when a state employee deprives an individual of property as long as the state makes available a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Here, adequate remedies were available to Plaintiff, including the grievance process. *Id.* at 535; *see*, *e.g.*, *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010); *Mattis v. Dohman*, 260 F. App'x 458, 461 (3d Cir. 2008). Thus, for these reasons, Plaintiff has no due process claim against Sgt. Ringling, Henderson or Lt. Walters under either the Fifth or Fourteenth Amendments.

[10] The Court notes that Incident 2, in which Plaintiff asserts that his legal mail was returned to the sender, does not implicate his due process rights. *In Procunier v. Martinez*, 416 U.S. 396 (1974), the Supreme Court held that "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." 416 U.S. at 418. Thus, the Supreme Court held, prisons must provide "minimum procedural safeguards" when they "censor or withhold delivery of a particular letter." *Id.* at 417. "Notice and a reasonable chance to challenge the original official's decision satisfy due process." *Vogt v. Wetzel*, 8 F.4th 182, 186 (3d Cir. 2021) (citing *Procunier*, 416 U.S. at 418-19). There is no dispute that the Amended Complaint asserted that Plaintiff received notice that his legal mail was returned on or around March 22, 2019 and that Plaintiff grieved the incident. (ECF 22, Amend. Compl. ¶¶ 36-39.) Moreover, Plaintiff has not indicated that he was asserting in the Amended Complaint a due process claim based on his legal mail being returned to the sender on the date in question.

pertaining to the PCRA case Plaintiff referenced in the Amended Complaint. Similarly, there is no evidence that action by any of the defendants prevented Plaintiff from pursuing a nonfrivolous or arguable claim in Civil Action No. 19-cv-2171, which he eventually settled while represented by counsel. Thus, Sgt. Ringling, Henderson, Lt. Walters, Cpt Furman, CO Rose, CO Staton, Marshall and Gaunter are entitled to summary judgment on the access-to-court claims Plaintiff asserts against them.

Additionally, several of these defendants are entitled to summary judgment for the alternative reason that Plaintiff has failed to produce evidence that he or she was personally involved in the alleged wrongdoing that provides the basis for Plaintiff's access-to-court claim asserted against him or her. As for Incident 1 (Sgt. Ringling, Henderson and Lt. Walters), Defendants point out that Plaintiff did not identify, in Grievance 790692 or otherwise, the individual or individuals who were responsible for losing his property. (ECF 84 ¶ 21.) Plaintiff acknowledges this but states that he cannot identify who lost his property because "he has no knowledge of" whose job it was inventory, pack and transfer his property under DOC policy when he was transferred to and from the RHU. (ECF 112 ¶ 21.) The time for Plaintiff to learn that information was during discovery, however. At this stage of the litigation, he cannot avoid summary judgment by claiming that he does not know who lost his property.

Plaintiff has similarly produced no evidence that CO Rose and CO Stanton were personally involved in Incident 2, which involved the return of his legal mail on or around March 22, 2019. As for Marshall (who Plaintiff claims retaliated against him in Incident 3), there is no evidence that he interfered with Plaintiff's legal material in any way.

Thus, when viewing the facts in the light most favorable to Plaintiff, he has not adduced evidence from which a reasonable fact finder could conclude that Sgt. Ringling, Henderson,

Lt. Walters, CO Rose, CO Staton or Marshall had the requisite personal involvement in the access-to-court claim he asserts against him or her.

Finally, Plaintiff contends that one or more of the defendants at issue violated DOC policy. But to prevail on any constitutional claims, including a First Amendment claim for interfering with his right to access a court, Plaintiff must do more than establish that a defendant violated DOC policy. *See*, *e.g.*, *Jordan v. Rowley*, No. 1:16-cv-1261, 2017 WL 281329, at *2 (M.D. Pa. 2017) ("[A] violation of an internal prison policy does not automatically rise to the level of a constitutional violation. A prison policy manual does not have the force of law and does not rise to the level of a constitutional violation.") (internal quotation and citation omitted). Thus, evidence that a particular defendant may have violated DOC policy is not evidence by itself from which a reasonable finder of fact could conclude that he or she violated Plaintiff's constitutional rights.

For all of these reasons, the Court will grant Defendants' motion as it pertains to the access-to-court claims (Incidents 1, 2, 3, 6 and 7) asserted against Sgt. Ringling, Henderson, Lt. Walters, Cpt. Furman, CO Rose, CO Staton, Marshall and Gaunter.

### 4.  Retaliation Claims

Plaintiff asserts that Marshall (Incident 3), CO Hoffman (Incident 4), CO Rose (Incident 5) and Cpt. Furman (Incident 6) retaliated against him for filing grievances. To avoid summary judgment in a defendant's favor, Plaintiff must show that there is a material issue of fact that: (1) he was engaged in constitutionally protected conduct; (2) the defendant at issue took adverse action against him; (3) Plaintiff's constitutionally protected conduct was a substantial or motivating factor in the decision to take that adverse action. *See*, *e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The filing of a grievance is an activity protected by the First Amendment. *See*, *e.g.*, *Fantone v. Lantini*, 780 F.3d

184, 192 n.8 (3d Cir. 2015). An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)).

Defendants move for summary judgment on each of Plaintiff's retaliation claims. Plaintiff does not oppose Defendants' motion in this respect. For this reason alone, Defendants are entitled to judgment in their favor on all of the retaliation claims. That said, the Court will briefly address why, when viewing the evidence that the parties have submitted in the light most favorable to Plaintiff, he cannot proceed with his retaliation claims because they fail as a matter of law.

### a.   Marshall and CO Hoffman

Plaintiff asserted in the Amended Complaint that Marshall threatened to sabotage his chances at receiving parole if he did not withdraw a grievance or grievances. (ECF 22, Amend. Compl. ¶ 48.) He similarly asserted that CO Hoffman dumped trash near his cell and called him a racial slur because he filed grievances. (*Id.* ¶ 50.) There is no any evidence that Marshall's alleged threat or CO Hoffman's alleged verbal harassment amounted to an adverse action. That is because verbal threats or harassment alone typically do not constitute an adverse action for establishing a prima facie retaliation claim. *See, e.g.*, *Chruby v. Kowaleski*, 534 F. App'x 156, 161 (3d Cir. 2013); *see also Dunbar v. Barone*, 487 Fed. App'x 721, 723 (3d Cir. 2012) (finding no adverse action based on allegation that defendants called plaintiff a "marked man" and threatened that his "days were numbered"); *Mears v. Kauffman*, No. 3:17-cv-1463, 2018 WL 3585081, *5 (M.D. Pa July 26, 2018) (verbal threat to place plaintiff in segregation did not amount to an adverse action).

### b.   CO Rose

Plaintiff alleged in the Amended Complaint that on October 23, 2019, CO Rose stopped him and subjected him to a strip search in retaliation for filing a grievance against him. (ECF 22,

Amend. Compl., 55.) There is no evidence that Plaintiff filed a grievance against CO Rose, however. Moreover, the video of the incident provides no evidentiary support for Plaintiff's assertion that CO Rose lacked a reasonable penological basis to stop and search him on October 23, 2019. For these reasons, there is no evidence of a causal link between Plaintiff's constitutionally protected conduct of filing a grievance and CO Rose's actions on that date.

### c. Cpt. Furman

Plaintiff asserted in the Amended Complaint that Cpt. Furman retaliated against him on February 3, 2020 for "negligently misplac[ing]" the legal materials Plaintiff left in the library. (ECF 22, Amend. Compl. ¶¶ 60-63.) Plaintiff has produced no evidence that Cpt. Furman was the person who misplaced his legal materials, however. Plaintiff also admitted in the grievance he filed about the incident (Incident 6) that he (Plaintiff) left his items in the law library because he forgot about them. (Def's Ex. I, ECF 85-1 at 40.) As set forth above, evidence that Cpt. Furman may not have followed DOC policy when Plaintiff's legal materials were eventually located is not evidence, in and of itself, sufficient to establish a constitutional violation.

In conclusion, Plaintiff has not directed the Court to evidence from which a fact finder could conclude that Marshall, CO Hoffman, CO Rose or Cpt. Furman retaliated against him. Thus, the Court will grant Defendants' motion on his retaliation claims (Incidents 3, 4, 5 and 6).

### 5. Conspiracy and Eighth Amendment Claims

Plaintiff asserted conclusory conspiracy and Eighth Amendment claims under § 1983 in the Amended Complaint. (*See* ECF 22, Amend. Compl. ¶¶ 82, 83, 93). Defendants argue that these claims fail as a matter of law because no evidence supports them. Plaintiff does not contest Defendants' position. He also fails to identify any particular defendant who personally violated his Eighth Amendment rights or engaged in a conspiracy with another defendant to violate his rights.

24

Additionally, the Court has already concluded that Sec. Wetzel, Supt. Tice and Mailroom Supervisor Weigle are entitled to summary judgment in favor based on their lack of personal involvement in any of the claims Plaintiff asserts in the Amended Complaint. The Court also concludes that no rational fact finder applying the uncontroverted evidence in the summary judgment record could find for Plaintiff on an either an Eighth Amendment claim[11] or conspiracy claim against any other defendant.[12]

---

[11] To establish an Eighth Amendment claim against a prison official, Plaintiff must show: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The first element sets out an objective inquiry: that the official "knowingly and unreasonably disregarded an objectively intolerable risk of harm." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001). The second element, "deliberate indifference," is a subjective standard: "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.* at 125. That is because "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

[12] "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights. This requires that the state actors took concerted action based on an agreement to deprive the plaintiff of his constitutional rights, and that there was an actual underlying constitutional violation of the plaintiff's rights." *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (internal quotations and citation omitted); *see, e.g.*, *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) ("To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights.") (internal citations and quotations omitted). Although the agreement can be shown by direct or circumstantial evidence, a plaintiff cannot base his claim solely on suspicion and speculation. *See, e.g.*, *Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)) ("mere general allegation...[or] averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient [to state a claim]" (alterations in original) (quoting *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984)); *Jackson v. Shouppe*, 17-cv-1135, 2018 WL 3361270, *2 (W.D. Pa. 2018) (same).

For these reasons, summary judgment will be granted in favor of all defendants on Plaintiff's conclusory conspiracy and Eighth Amendment claims.

  6. <u>State Law Claims</u>

  Because the Court has determined that Defendants are entitled to summary judgment in their favor on all of Plaintiff's § 1983 claims, it will decline to exercise jurisdiction over his pending state law claims for negligence. Where, as is the case here, all claims over which the Court has original jurisdiction have been dismissed, the district court may decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367(c)(3). Although declining to exercise jurisdiction is within the discretion of the district court, the Court of Appeals has held that, absent extraordinary circumstances, pendent jurisdiction should be declined where the federal claims are no longer viable. *Shaffer v. Bd. of Sch. Dir. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (citations omitted).

  In this case, Plaintiff's federal claims are no longer viable and no extraordinary circumstances warrant the exercise of supplemental jurisdiction over Plaintiff's state law claims. Thus, the Court will dismiss Plaintiff's state law claims without prejudice. *See*, *e.g.*, *Williams v. City of Johnstown*, No. 3:15-cv-144, 2016 WL 1069100, at *7 (W.D. Pa. Mar. 17, 2016) (in a case that defendants had removed from state court, the district court declined to exercise supplemental jurisdiction over the state-law claims and dismissed them without prejudice to his ability to refile those claims in state court); *see also Camacho v. Beers*, No. 2:16-cv-1644, 2018 WL 6618410, at *3 (W.D. Pa. Dec. 18, 2018) (citing *Probst v. SCI Greene Med. Dept.*, No. 2:17-cv-1014, 2018 WL 2012892, *3 (W.D. Pa. Apr. 30, 2018)).

**V.      Conclusion**

Based on the above, the Court will grant Defendants' Motion for Summary Judgment (ECF 78) as to all federal claims asserted against him, enter judgment in their favor and against Plaintiff on all federal claims, and dismiss Plaintiff's remaining state law claims without prejudice to bring in state court.


Dated: December 20, 2021                              /s/ Patricia L. Dodge
                                                      PATRICIA L. DODGE
                                                      United States Magistrate Judge